NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0200n.06

Case No. 21-3293

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 18, 2022
DEBORAH S. HUNT, Clerk

KEVIN J. POTTS,

    Petitioner - Appellant,

v.

LYNEAL WAINWRIGHT, Warden,

    Respondent - Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

Before: SUTTON, Chief Judge; COLE and DONALD, Circuit Judges.

SUTTON, Chief Judge. An Ohio jury convicted Kevin Potts of felonious assault when, in violation of a no-contact agreement, he confronted a corrections officer at the officer's home. Potts arrived at the officer's home armed with a gun and a knife and proceeded to get into a fight with the officer, which ended only when police officers came to the scene. Potts seeks to overturn the resulting conviction for felonious assault. Because the Ohio Court of Appeals reasonably determined that his conviction rested on sufficient evidence, we deny Potts' federal petition for a writ of habeas corpus.

Kevin Potts' girlfriend at the time was Lori Welly. While serving a prison term in the Hancock County Justice Center, Welly claimed that Corrections Officer John Shepard raped her. After Welly's release in September 2014, Potts and Welly went to Shepard's home. They parked in the driveway, Potts left his gun in the car, and they went to the Shepards' front door. When Mr.

Shepard came to the door, Potts said, "you know what you did." R.9-5 at 10. The Shepards asked Potts and Welly to leave and called the police.

Responding to the trespass complaint, the police pulled over Potts and Welly. The police gave Potts a criminal trespass warning. The next day, Mr. Shepard obtained a temporary protection order against Potts, and a few months later Shepard and Potts entered a no-contact agreement.

A Hancock County detective investigated Welly's rape allegation and found no evidence to support it. In June 2015, Welly pleaded no contest to providing false information during an official investigation for her allegations against Shepard.

The same day that Welly entered her plea, Potts returned to the Shepards' house. This time, he arrived late at night. This time, he parked his car down the street from the Shepards' house. And this time, he brought a gun and a knife to the door.

When Mr. Shepard unlocked the door, Potts tried to ram it open, causing the door to hit Shepard in the head. While Potts tried to shove the door open, Shepard tried to close it, shouting "no, no." *Id.* at 16. Potts got his arm inside the house with the gun in hand, which prevented the door from closing, and eventually worked his way into the house. Potts pointed his gun at Shepard. Shepard grabbed the gun with both hands. They wrestled over the gun, eventually made their way outside, and continued to struggle in the driveway.

Police arrived. A detective saw both men fighting for control of the gun. The detective told Potts several times to drop the gun, and eventually he did. When the detective picked up the gun, it had a bullet in the chamber. The detective also noticed that Potts appeared to be drunk. When asked how much he had to drink, Potts responded, "[n]ot enough." R.9-4 at 51.

The Hancock County Grand Jury indicted Potts for aggravated burglary and felonious assault. Both counts included a specification for using a firearm. A jury convicted Potts on both

counts. The trial court sentenced Potts to seven years on the aggravated burglary count, seven years on the felonious assault count, and three years for the firearm specification on the burglary count, generating a total sentence of 17 years. Potts appealed the convictions on several grounds, including insufficiency of the evidence. The Ohio Court of Appeals affirmed the convictions, *State v. Potts*, 69 N.E.3d 1227 (Ohio Ct. App. 2016), and the Ohio Supreme Court declined further review, *State v. Potts*, 74 N.E.3d 465 (Ohio 2017). Potts moved to reopen his appeal in state court, arguing that he received ineffective assistance of appellate counsel. The Ohio Court of Appeals denied the motion, and the Ohio Supreme Court refused to review the denial. *State v. Potts*, 108 N.E.3d 1103 (Ohio 2018). Potts did not exercise his option to petition for a state writ of habeas corpus. *See* Ohio Rev. Code § 2725.01.

Potts filed a federal petition for a writ of habeas corpus in federal court. *See* 28 U.S.C. § 2254. The district court denied the petition. It granted a certificate of appealability on Potts' claim that the felonious-assault conviction rested on insufficient evidence.

The Fourteenth Amendment to the U.S. Constitution requires the State to prove each element of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315–316 (1979). Because it is the jury's "responsibility" to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences," *id.* at 319, appellate review of sufficiency-of-the-evidence claims involves a light touch. The constitutional inquiry turns on whether "*any* rational trier of fact" could find the defendant guilty "beyond a reasonable doubt" after construing the record in the view "most favorable to the prosecution." *Id.*

One other hurdle awaits Potts. Because the Ohio Court of Appeals adjudicated this claim on the merits, the Antiterrorism and Effective Death Penalty Act permits a federal court to grant the writ only if that decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Only if no "fairminded jurist" could uphold the conviction may we grant relief in this context. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). All told, Potts' claim faces "two layers of judicial deference," one premised on deference to the jury under *Jackson*, the other premised on deference to the state courts under AEDPA. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).

Ohio criminalizes felonious assault. "No person," the law says, "shall knowingly . . . [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon." Ohio Rev. Code § 2903.11(A)(2). To satisfy the "attempt" portion of the crime, a defendant must take a "substantial step in a course of conduct calculated to cause physical harm." *State v. Brooks*, 542 N.E.2d 636, 642 (Ohio 1989).

Ohio caselaw adds contour to the "attempt" element. Pointing a gun at someone "coupled with a threat, which indicates an intention to use" the gun, satisfies the element. *State v. Green*, 569 N.E.2d 1038, 1041 (Ohio 1991). So does holding a knife while stepping toward the victim. *State v. Workman*, 617 N.E.2d 723, 725–26 (Ohio Ct. App. 1992). But simply pointing a gun at someone without other signs of an intent to harm him does not rise to felonious assault. *Brooks*, 542 N.E.2d at 642. Neither does pulling a gun on someone if the other person instantly wrestles it away. *State v. Kline*, 464 N.E.2d 159, 165 (Ohio Ct. App. 1983).

In upholding the jury verdict, the Ohio appellate court did not act unreasonably. The jury heard that Potts went to the Shepards' door with a gun and a knife, rammed the door to get inside, injured Shepard's head in the process, pointed the gun at Shepard, wrestled with Shepard over control of the gun until the police arrived, and even then did not drop the gun until after several requests by the police. *Potts*, 69 N.E.3d at 1242. Other circumstances support the verdict as well.

4

Potts came to the Shepards' house despite a court-sanctioned no-contact agreement and a previous warning. *Id.* He parked his car down the street, which in contrast to his prior confrontation with Officer Shepard suggested a desire to hide from onlookers his arrival at the house. *Id.* This all happened on the same day that Welly pleaded no contest to charges resulting from accusations against Shepard. *Id.* at 1235. Not helping matters, Potts had been drinking that evening and his gun was loaded. *See id.* at 1235–37. A rational juror, accepting fair inferences from the record, could find beyond a reasonable doubt that Potts intended to harm Shepard with a deadly weapon and took a substantial step toward doing so.

Potts resists this conclusion, relying primarily on *Nash v. Eberlin*, 258 F. App'x 761 (6th Cir. 2007). That case involved an altercation between a husband and wife. Agitated, the husband went upstairs to get a loaded gun. After following his wife into their daughter's room, he ended up in a struggle with his son over the gun, causing it to fire accidentally into the ground and the wall. He then put the gun away and left. *Id.* at 762–63, 766. The Ohio courts upheld the husband's conviction for felonious assault. On federal habeas review, we held that the Ohio courts unreasonably applied *Jackson* because the prosecution could not have proved an "attempt to cause physical harm" with a gun beyond a reasonable doubt when Nash never pointed the gun at anyone. *Id.* at 765–67. Here, the Ohio Court of Appeals distinguished *Nash* on the grounds that Potts not only pointed the gun at Shepard but also used "aggressive forward momentum" to ram the door and that he continued to struggle for the gun until the police arrived. *Potts*, 69 N.E.3d at 1242–43. It is fair to conclude, as the Ohio Court of Appeals concluded, that Potts showed far more intent to cause harm than Nash did.

Potts also seeks aid from *State v. Kline*, 464 N.E.2d 159 (Ohio Ct. App. 1983). It involved a woman who pulled a gun on a potential victim in a bar for approximately "two seconds" before

the victim "immediately" grabbed it, leading to a short struggle between them. *Id.* at 165–66. The Ohio court found this evidence insufficient to establish an attempt to cause physical harm. *Id.* at 166. The Ohio Court of Appeals reasonably distinguished this case on the ground that Kline did not show "any type of aggressive forward momentum while pointing the gun at the victim to execute" the assault. *Potts*, 69 N.E.3d at 1242. Kline and her victim, it's worth adding, ran into each other at a bar by happenstance. *See Kline*, 464 N.E.2d at 161–62. By contrast, Potts deliberately went to the Shepards' house with a loaded gun and knife and in violation of a no-contact agreement.

Potts' other arguments fail to come to grips with the jury's authority to find the facts. In his view: He rang the doorbell to Shepard's house and merely had a gun in his waistband. Shepard saw the gun and tried to take it. While they struggled, Potts told Shepard to let go of the gun because he was not going to hurt him. He never pointed the gun at Shepard, never threatened him, and fell into the doorway when Shepard pulled him in. And the bullet found its way into the chamber accidentally. All of this, sure enough, is consistent with Potts' testimony at the trial. But it is inconsistent with other testimony in the case, and the jury could reasonably credit that competing evidence over Potts' testimony.

We affirm.